OPINION
Juanita Barrett appeals from a judgment of the Dayton Municipal Court, which awarded damages for unpaid rent to her former landlord, Aaron Elahab.
Barrett lived at 1203 Fairview, Apt. B, in Dayton from December 1993 until mid-November 1998. When she moved into the apartment, the rent had been $260 per month. Prior to moving in, she had been required to give Elahab the first month's rent, a $260 security deposit, and $260 in "emergency money." The emergency money was designed to provide an extra measure of security for Elahab. In June 1998, Barrett's rent was increased to $285 per month.
The parties disagreed about many of the circumstances surrounding Barrett's departure from the apartment, but it was undisputed that she had not paid rent for September, October, or the first half of November 1998. She vacated the property by agreement of the parties on November 15, 1998, after a complaint for forcible entry and detainer had been filed. Elahab sued for unpaid rent, the cost of repairing the premises, and attorney fees. Barrett counterclaimed for rent abatement based on the condition of the premises. Barrett's counterclaim did not contain a claim for relief pursuant to R.C. 5321.16(C): return of security deposit, damages equal to amount of security deposit due, and attorney fees. A hearing was held before a magistrate on June 1 and 22, 1999.
According to Elahab, Barrett had not paid rent for September, October, or November 1998, and he could not remember whether she had paid rent for August 1998. He said that Barrett had kept her apartment in good order for the first couple of years of her tenancy, but that the condition of the apartment had dramatically deteriorated in recent years. Elahab testified that the apartment had been cluttered and that Barrett had not cooperated with efforts to have the apartment exterminated. Elahab also stated that, during the course of Barrett's tenancy, he had paid or credited her various amounts out of her security deposit and the emergency money to cover her rent or utilities. Although Elahab did not have any records of these payments, he said that both the security deposit and the emergency money had been depleted by the time Barrett vacated the apartment. He also claimed that he had promptly addressed conditions in the apartment about which Barrett had complained, such as a broken thermostat and blown fuse. Although Elahab's complaint alleged that he needed to make repairs to the apartment after Barrett had moved out, he testified at the hearing that basic cleaning was all that had been required.
Barrett testified to poor conditions in her apartment, including unworkable outlets and lights, exposed wires, inoperable smoke detectors, and deterioration of the ceiling above her shower. She also claimed that Elahab had never loaned her any money from her security deposit or emergency money.
The magistrate expressly found that Elahab's testimony about the disbursement of the security deposit and emergency money was more credible than Barrett's testimony, and that a total of $712.50 in unpaid rent was owed by Barrett for September, October, and the first half of November 1998. The magistrate also found, however, that the evidence supported some abatement of the rent due to the condition of Barrett's apartment and awarded her $250 on her counterclaim. Offsetting these amounts, the magistrate awarded $462.50 to Elahab. Neither party filed objections, and the trial court adopted the magistrate's findings.
Barrett raises one assignment on appeal.
 PLAINTIFF FAILED TO MEET HIS BURDEN OF PROOF TO SHOW THAT HE HAD DISBURSED DEFENDANT'S SECURITY DEPOSIT AND "EMERGENCY MONEY" DEPOSIT TO HER DURING THE COURSE OF HER TENANCY.
Barrett claims that Elahab bore the burden of proving that he had disbursed Barrett's security deposit and emergency money to her and that his evidence on this matter was insufficient, especially in light of his statutory duty under R.C. 5321.16(B) to notify tenants in writing of claimed deductions from the security deposit.
As a preliminary matter, we note that Barrett did not file objections in the trial court to the magistrate's report as required by Civ.R. 53(E)(3)(b). The failure to file such objections waives the right to appellate review and precludes relief from this court in the absence of civil plain error.Anderson v. Steele (Apr. 14, 2000), Montgomery App. No. 17992, unreported; Timbercreek Village Apts. v. Myles (May 28, 1999), Montgomery App. No. 17422, unreported. We find no civil plain error.
In reviewing challenges based on the weight of the evidence, we are mindful that an appellate court must be guided by a presumption that the findings of the trier of fact are correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The deference accorded the trial court is based upon the trier of fact's ability "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. The knowledge the trial court gains through observing the witnesses cannot be conveyed to a reviewing court by a printed record.Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124, citing Trickeyv. Trickey (1952), 158 Ohio St. 9, 13.
The only evidence presented about the security deposit disbursements was the parties' contradictory testimony. We recognize that Elahab's testimony about his financial arrangement with Barrett paints an unusual picture of the landlord-tenant relationship insofar as he was willing, during the tenancy, to advance portions of the security deposit and emergency money to Barrett for her benefit. The magistrate expressly stated, however, that he found Elahab to be more credible than Barrett on the question of security deposit disbursements.
When the trial court adopted the magistrate's findings of fact without objection from the parties, the findings of the magistrate became the findings of the trial court. Given that the resolution of this dispute turned entirely on the trial court's assessment of the parties' credibility, we will not disturb its finding on appeal.
Barrett claims that Elahab's testimony on this issue was insufficient to support the trial court's finding in light of the requirement imposed by R.C. 5321.16(B) that a landlord provide an itemized, written list of the damages for which he is withholding all or part of a security deposit within thirty days of a tenant vacating the premises. The trial court found, however, that no security deposit had remained at the end of Barrett's tenancy because Elahab had already credited or loaned her these monies while she had lived in his apartment.
R.C. 5321.16(B) provides in part as follows:
 Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession.
It is clear that the written accounting required by the statute pertains to the deposit in the possession of the landlord when the tenancy ends. Accordingly, the fact that Elahab had no written record of his claimed credits or loans to Barrett during the tenancy went at most to the weight to be accorded his testimony and not to its sufficiency. Where, as here, a trial court finds that, by agreement with her landlord, a tenant has, at the end of her tenancy, already applied portions of her security deposit to rent or utilities owing in months when she was unable to pay, the trial court properly concludes that no security deposit existed at the end of the tenancy and that R.C. 5321.16(B) does not apply.
Barrett cites this court's case of Holtzman v. HopwoodRealty, Inc. (1946), 77 Ohio App. 515, for the proposition that Elahab's undocumented testimony was insufficient evidence that the security deposit had been depleted during the tenancy. Somewhat similar to this case, Hopwood, an attorney, was holding money belonging to Holtzman, which Hopwood claimed he should be able to retain as legal fees. Holtzman disputed Hopwood's claim. After trial, the court ruled against Hopwood, who then appealed. The court of appeals affirmed, observing that where Hopwood had kept no records, relied only upon his memory, and "was not able to give the court any facts from which the court would have been justified in finding that there was anything due Hopwood," the judgment was not against the manifest weight of the evidence. Id.
at 524. The court of appeals did not say that Hopwood's testimony was insufficient, but only, in effect, that the trial court, upon consideration of all the evidence, reasonably concluded that Hopwood had failed to meet his burden of proof. In this case, the trial court could have likewise determined that Elahab had not met his burden of proof, not because his testimony was insufficient evidence, but because it was less credible than Barrett's. Here, however, the trial court credited Elahab's testimony over Barrett's, just as the trial court might have credited Hopwood's testimony over Holtzman's but did not.
Considering the parties' claims as framed by the pleadings, the judgment in this case is amply supported by the evidence.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
KERNS, J., concurs in judgment.